MANATT, PHELPS & PHILLIPS, LLP
Steven M. Goldberg (Bar No. CA 082174)
E-Mail:  sgoldberg@manatt.com
Emil Petrossian (Bar No. CA 264222)
E-Mail:  epetrossian@manatt.com
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

*Attorneys for Defendants*
ROBERT P. NICKELL, COMPREHENSIVE
TOXICOLOGY BILLING, LLC, and EXEC
BILLING SERVICES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIYA MEDCARE FINANCE, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT P. NICKELL, an individual; COMPREHENSIVE TOXICOLOGY BILLING, LLC, a California limited liability company; EXEC BILLING SERVICES, LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 14-07806 MMM (SHx)<br><br>Hon. Margaret M. Morrow<br>Courtroom No. 780<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST THROUGH FOURTH AND SIXTH THROUGH TENTH CLAIMS IN PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:    May 4, 2015<br>Hearing Time:   10:00 a.m.<br><br>Date Filed:    October 8, 2014<br>Trial Date:    None Set |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 4, 2015 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom No. 780 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, defendants Comprehensive Toxicology Billing, LLC ("CTB"), Exec Billing Services, LLC ("EBS"), and Robert Nickell ("Nickell") (collectively, "Defendants"), by and through their undersigned attorneys, will and hereby do move, under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the first through fourth and sixth through tenth claims set forth in plaintiff Aliya Medcare Finance, LLC's first amended complaint.

The grounds for Defendants' motion to dismiss are that Aliya has failed to state valid claims upon which relief can be granted against CTB and Nickell for fraudulent inducement, fraudulent concealment, promissory fraud, negligent misrepresentation, and conversion, against Nickell for intentional interference with contractual relations and violation of California Business & Professions Code §§ 17200 *et seq.*, against EBS for breach of contract, and against all of the Defendants for imposition of a constructive trust.

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, the concurrently filed proposed order, all other pleadings and papers on file in this action, and such other argument or evidence that the Court may consider at or before the hearing on this motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    This motion is made following the conferences of counsel pursuant to Local

2    Rule 7-3, which took place on January 15, 2015 and January 27, 2015.

3

4                                    Respectfully submitted,

5    Dated:  January 30, 2015        MANATT, PHELPS & PHILLIPS, LLP
                                     Steven M. Goldberg
6                                    Emil Petrossian

7

8                                    By:_____/s/  Emil Petrossian_____
                                         Emil Petrossian
9                                        *Attorneys for Defendants*
                                         ROBERT P. NICKELL,
10                                       COMPREHENSIVE TOXICOLOGY
                                         BILLING, LLC, and EXEC BILLING
11                                       SERVICES, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     SUMMARY OF FACTUAL ALLEGATIONS IN FIRST AMENDED COMPLAINT .................................................................................. 3

III.    LEGAL STANDARD ........................................................................... 5

IV.     ARGUMENT ..................................................................................... 7

        A.      Aliya Has Failed to State a Claim of Fraudulent Inducement ............. 7

        B.      Aliya Has Failed to State a Fraudulent Concealment Claim ............. 11

        C.      Aliya Has Failed to State a Negligent Misrepresentation Claim ........ 14

        D.      Aliya Has Failed to State a Promissory Fraud Claim ........................ 15

        E.      Aliya Has Failed to State a Conversion Claim ................................. 16

        F.      Aliya Has Failed to State a Claim of Intentional Interference with Contractual Relations ................................................................. 19

        G.      Aliya Has Failed to State a "Constructive Trust" Claim ................... 20

        H.      Aliya Has Failed to State an Unfair Competition Claim ................... 21

        I.      Aliya Has Failed to State a Breach of Contract Claim Against EBS ............................................................................................ 22

        J.      Aliya's Claims Should Be Dismissed Without Leave to Amend Because Aliya Failed in Its First Amended Complaint to Cure the Numerous Defects Discussed Above, and Cannot Possibly Cure Them in Subsequent Pleadings ................................................. 23

V.      CONCLUSION ................................................................................ 24

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aetna Cas. & Sur. Co. v. Aztec Plumbing Corp.*,
   796 P.2d 227 (Nev. 1990).................................................................23

*Alam v. Reno Hilton Corp.*,
   819 F. Supp. 905 (D. Nev. 1993) .......................................................19

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011).........................................................5, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................6

*Balistreri v. Pacifica Police Dep't.*,
   901 F.2d 696 (9th Cir. 1990) ..............................................................5

*Barmettler v. Reno Air, Inc.*,
   956 P.2d 1382 (1998) ........................................................................7

*Bartsas Realty, Inc. v. Nash*,
   402 P.2d 650 (Nev. 1965)..................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................6

*Benson Pump Co. v. S. Cen. Pool Supply, Inc.*,
   No. 3:02-CV-0414-RAM, 2006 WL 845775
   (D. Nev. Mar. 28, 2006) ...................................................................18

*Bielar v. Washoe Health Sys., Inc.*,
   306 P.3d 360 (Nev. 2013)....................................................................9

*Blanck v. Hager*,
   360 F. Supp. 2d. 1137 (D. Nev. 2005) ...............................................19

*Bulbman, Inc. v. Nev. Bell*,
   825 P.2d 588 (1992) ..........................................................10, 15, 16

*Butcher v. Advanced Mineral Techs. Inc.*,
   No. 2:10-CV-01802-PMP-LRL, 2011 WL 810256
   (D. Nev. Mar. 2, 2011) .....................................................................20

*Cal. Emergency Physicians Med. Grp. v. PacifiCare of Cal.*,
   111 Cal. App. 4th 1127 (2003)...........................................................22

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
4

*Coleman v. Romano,*
    Nos. 58597, 59257, 2014 WL 549489
    (Nev. Feb. 10, 2014) ................................................................... 10

5
6

*Cont'l Airlines v. Mundo Travel Corp.,*
    412 F. Supp. 2d 1059 (E.D. Cal. 2006) ....................................... 21

7
8

*Dow Chem. Co. v. Mahlum,*
    970 P.2d 98 (Nev. 1998), *overruled in part on other grounds by*
    *GES, Inc. v. Corbitt,* 21 P.3d 11, 14-15 (Nev. 2001) ................... 11

9
10

*Epperson v. Roloff,*
    719 P.2d 799 (Nev. 1986) ...................................................... 11, 12

11

*Executive Mgmt., Ltd. v. Ticor Title Ins. Co.,*
    963 P.2d 465 (Nev. 1998) ............................................................ 20

12
13

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.,*
    460 F. Supp. 2d 1246 (D. Nev. 2006) ......................................... 14

14
15

*Giles v. Gen. Motors Acceptance Corp.,*
    494 F.3d 865 (9th Cir. 2007) ....................................................... 18

16
17

*Grant v. Pensco Trust Co., LLC,*
    No. 12-cv-06084-WHO, 2013 WL 4772673
    (N.D. Cal. Sept. 3, 2013) ............................................................. 10

18
19

*Harris v. Amgen, Inc.,*
    770 F.3d 865 (9th Cir. 2014) ......................................................... 5

20
21

*Heldenbrand v. Multipoint Wireless, LLC,*
    No. 2:12-cv-01562-RCJ-PAL, 2012 WL 5198479
    (D. Nev. Oct. 18, 2012) ............................................................... 15

22

*Hunt v. Wells Fargo Bank, NA,*
    576 F. App'x 693 (9th Cir. 2014) ................................................ 15

23
24

*In re Wal-Mart Wage & Hour Employment Practices Litig.,*
    490 F. Supp. 2d 1091 (D. Nev. 2007) ......................................... 18

25
26

*J.J. Indus., LLC v. Bennett,*
    71 P.3d 1264 (Nev. 2003) ............................................................ 19

27

*Jablon v. Dean Witter & Co.,*
    614 F.2d 677 (9th Cir. 1980) ......................................................... 5

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................ 6

5

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...................................................................... 21

6

7

*Lectrodryer v. SeoulBank*,
  77 Cal. App. 4th 723 (2000) ............................................................... 21

8

9

*Locken v. Locken*,
  650 P.2d 803 (Nev. 1982) .................................................................. 20

10

*Long v. Towne*,
  693 P.2d 528 (Nev. 1982) .................................................................. 20

11

12

*Mandalay Corp. v. Eighth Judicial Dist. Ct. of Nev.*,
  No. 61189, 2013 WL 7159009
  (Nev. Nov. 12, 2013) .......................................................................... 23

13

14

*Medimatch, Inc. v. Lucent Techs., Inc.*,
  120 F. Supp. 2d 842 (N.D. Cal. 2000) ............................................... 21

15

16

*Melt Franchising, LLC v. PMI Enters., Inc.*,
  No. CV 08-4148 PSG, 2009 WL 32587
  (C.D. Cal. Jan. 2, 2009) ...................................................................... 21

17

18

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) .............................................................. 5

19

20

*Moss v. United States Secret Service*,
  572 F.3d 962 (9th Cir. 2009) ............................................ 6, 11, 16, 20

21

*N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*,
  163 F.3d 449 (7th Cir. 1998) ............................................................... 6

22

23

*Okeke v. Biomat USA, Inc.*,
  927 F. Supp. 2d 1021 (D. Nev. 2013) ............................................... 18

24

*Paulsen v. CNF, Inc.*,
  559 F.3d 1061 (9th Cir. 2009) ............................................................. 6

25

26

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser,
  Weil & Shapiro, LLP*,
  150 Cal. App. 4th 384 (2007) ............................................................ 18

27

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4

*Pelletier v. Pelletier*,
742 P.2d 1027 (1987) ...................................................................... 17

5

*Plummer v. Day/Eisenberg, LLP*,
184 Cal. App. 4th 38 (2010) ........................................................... 17

6

7

*Rodriguez v. Primadonna Co.*,
216 P.3d 793 (2009) ........................................................................ 23

8

9

*Rossberg v. Bank of Am., N.A.*,
219 Cal. App. 4th 1481 (2013) ......................................................... 8

10

*Shoemaker v. Myers*,
52 Cal. 3d 1 (1990) ......................................................................... 19

11

12

*Sparks v. Alpha Tau Omega Fraternity, Inc.*,
255 P.3d 238 (Nev. 2011) ............................................................... 14

13

*Spittler v. Washoe County*,
No. 61300, 2014 WL 6449306 (Nev. Nov. 14, 2014)....................... 23

14

15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........................................................ 6, 9

16

17

*Standard Platforms, Ltd. v. Document Imaging Sys. Corp.*,
No. Civ. 93-20993 SW, 1995 WL 691868
(N.D. Cal. Nov. 15, 1995) ................................................................. 7

18

19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......................................................................... 5

20

*Tenzer v. Superscope, Inc.*,
39 Cal. 3d 18 (1985).......................................................................... 16

21

22

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) ............................................................. 6

23

24

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........................................................... 6

25

26

*Hester v. Vision Airlines, Inc.*,
No. 2:09-CV-0117-RLH-RJJ, 2011 WL 856871
(D. Nev. Mar. 9, 2011) ................................................................... 18

27

28

*Vu v. Cal. Commerce Club, Inc.*,
58 Cal. App. 4th 229 (2007).............................................................. 18

1
2

## TABLE OF AUTHORITIES
### (continued)

Page

*Waldman v. Maini,*
    195 P.3d 850 (Nev. 2008).......................................................................20

*Wantz v. Redfield,*
    326 P.2d 413 (1958) ......................................................................16, 17

## STATUTES

Cal. Bus. & Prof. Code § 17200 ........................................................2, 21

Cal. Code Regs. Title 8, § 9767.1 .............................................................7

## RULES

Fed. R. Civ. P. 9(b) ...................................................................6, 14, 16

Fed. R. Civ. P. 12(b)(6) ...........................................................................5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      PRELIMINARY STATEMENT**

3          This garden-variety breach of contract action centers around a series of

4    purchase agreements covering the sale of healthcare receivables for toxicology

5    services performed in connection with workers' compensation claims.  In late 2012

6    and early 2013, plaintiff Aliya Medcare Finance, LLC (or its affiliate, Aliya

7    Companies International, LLC) ("Aliya") and defendant Comprehensive

8    Toxicology Billing, LLC ("CTB") negotiated and entered into three arm's length

9    purchase agreements in which Aliya agreed to purchase CTB's then-existing

10   receivables and CTB's future receivables for a five-year period.  After the parties

11   performed their respective obligations in full under the first two agreements and

12   performed the third agreement for approximately 20 months, and even though Aliya

13   generated nearly $16 million dollars in revenue during under those agreements,

14   Aliya initiated this lawsuit on October 8, 2014 and terminated the parties'

15   contractual relationship on November 5, 2014.

16          In its first amended complaint, Aliya attempts to transform this

17   straightforward breach of contract action into a convoluted tort dispute, alleging

18   various fraud claims, a conversion claim, and claims of intentional interference with

19   contractual relations, unfair competition, and "constructive trust."[1]  The reasons

20   why Aliya does so are readily apparent:  Nickell was not a party to the purchase

21   agreements, but Aliya wishes to name him personally in this lawsuit to put undue

22

23

---

24   [1]  Aliya has asserted separate breach of contract claims against CTB and EBS;
     fraudulent inducement, concealment, promissory fraud, and negligent

25   misrepresentation claims against CTB and Nickell; a conversion claim against CTB

26   and Nickell; intentional interference with contractual relations and unfair
     competition claims against Nickell; and constructive trust and accounting claims

27   against all three Defendants.  CTB is not moving to dismiss Aliya's breach of

28   contract claim against CTB at this time.

pressure on him and sully his business reputation.  In addition, Aliya seeks to create an artificial basis for requesting punitive damages where no such damages may lie.

Aliya's efforts to "tortify" this action are futile, however, because Aliya has not adequately pleaded — and cannot plead — any tort claims against any of the Defendants.  Specifically:

- Aliya's fraudulent inducement and negligent misrepresentation claims fail because, among other reasons, they are subsumed by Aliya's breach of contract claim against CTB, and Aliya has failed to plead facts with specificity that are sufficient to establish the causation, justifiable reliance, and damages elements of those claims.

- Aliya's fraudulent concealment claim fails because Aliya has not pleaded, and cannot plead, any facts establishing a duty of disclosure upon CTB and Nickell.

- Aliya's promissory fraud claim fails because it is based on nothing more than CTB's alleged breach of the third purchase agreement, and Aliya has not pleaded any facts establishing fraudulent intent.

- Aliya's conversion claim fails because it is subsumed by Aliya's breach of contract claim against CTB, and because Aliya has failed to allege a specific identifiable sum that was allegedly stolen.

- Aliya's intentional interference with contractual relations claim (brought solely against Nickell) fails because Nickell, as CTB's agent, cannot interfere with that company's contracts as a matter of Nevada law.

- Aliya's unfair competition claim, brought pursuant to California Business & Professions Code §§ 17200 *et seq.* fails as a matter of law because, among other reasons, the parties' third purchase agreement is governed by Nevada law, not California law.

- Aliya's "constructive trust" claim fails because a constructive trust is a remedy, not a standalone claim, and in any event, Aliya cannot plead the

existence of a confidential relationship between Aliya and any of the Defendants — a necessary element for imposition of a constructive trust under Nevada law.

In addition, Aliya also has failed to state a claim against EBS for breach of contract. Aliya's contract claim against EBS fails because it arises solely out of an indemnification agreement. Under both that agreement and Nevada law, Aliya must first prove at trial that CTB actually breached the third purchase agreement and establish its contract damages before seeking indemnification from Aliya therefor. Thus, Aliya's breach of contract claim against EBS is premature and not ripe for adjudication.

In short, Aliya has not pleaded, and cannot plead, facts sufficient to support each essential element of its tort claims. What is more, its breach of contract claim against EBS is premature. Aliya has already had a second opportunity to address the numerous defects plaguing its first amended complaint, but nevertheless has failed to cure those defects. Accordingly, for the reasons discussed below, Defendants respectfully request that the Court grant this motion and dismiss Aliya's tort claims and its breach of contract claim against EBS without leave to amend.

## II.  SUMMARY OF FACTUAL ALLEGATIONS IN FIRST AMENDED COMPLAINT[2]

CTB is a medical billing company that purchases and services healthcare accounts receivable covering toxicology services referred by physicians treating patients suffering from work-related injuries. (First Am. Compl. ("FAC") ¶ 29, Ex. C at 1.) Aliya is engaged in the business of purchasing such accounts receivable and collecting payment thereon. (*Id.*)

---

[2]  By summarizing the allegations set forth in the complaint, Defendants in no way concede or admit the truth or accuracy of those allegations, and hereby expressly reserve all of their rights, claims, defenses, objections, and contentions.

In late 2012 and early 2013, Aliya and CTB entered into a series of purchase agreements relating to the sale of CTB's receivables.  (FAC ¶¶ 27-29, Exs. A-C.) The first two purchase agreements, dated as of November 29, 2012 and February 2013, respectively, regarded the sale of already existing receivables.  (FAC, Exs. A-B.)  The third purchase agreement, dated as of March 28, 2013 (the "Third Agreement"), concerned the sale of already existing receivables as well as the sale of all of CTB's future receivables for a period of approximately five years (through December 31, 2018).  (FAC, Ex. C §§ 2(e), 3, at 2.)  In connection with the Third Agreement, EBS executed a "Covenant Not to Compete" with Aliya as well as a "Covenant to Indemnify" Aliya.  (FAC ¶ 30, Exs. D-E.)

In its first amended complaint, Aliya avers that CTB breached the Third Agreement by allegedly:

- Failing to repurchase receivables, at a purchase price of approximately $3.65 million, that Aliya purported to reject under Paragraph 14(f) of the Third Agreement ("Paragraph 14(f)") on the ground that the physicians who referred the toxicology services covered by those receivables were outside of applicable Medical Provider Networks ("MPNs") (FAC ¶¶ 35-66);

- Failing to repurchase certain receivables that Aliya purported to reject under Paragraphs 14(d) and (e) of the Third Agreement on the ground that those receivables had already been settled or paid out by the applicable insurance companies (FAC ¶¶ 67-77);

- Diverting business away from Aliya by servicing receivables through EBS (FAC ¶¶ 78-86); and

- Withholding payments on receivables previously sold to Aliya and obstructing Aliya's efforts to collect on them (FAC ¶¶ 89-117).[3]

---

[3]  Defendants vehemently deny all of Aliya's allegations and will prove at trial that CTB did not breach the Third Agreement (or any other agreement).  In fact,

1  In addition, Aliya alleges that CTB and Nickell committed fraud by supposedly

2  misrepresenting or concealing facts concerning the MPN status of physicians who

3  referred the toxicology services that generated the receivables covered by the Third

4  Agreement.  (FAC ¶¶ 38, 63-65.)

5  **III.   LEGAL STANDARD**

6      A motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of

7  Civil Procedure tests the legal sufficiency of the claims and allegations asserted in

8  the complaint.  Dismissal is proper if the complaint "lacks a cognizable legal theory

9  or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela*

10 *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Dismissal is appropriate

11 also if the complaint alleges facts which demonstrate that the complaint is barred as

12 a matter of law.  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir.

13 1990); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  "A district

14 court may deny a plaintiff leave to amend if it determines that [the] allegation of

15 other facts consistent with the challenged pleading could not possibly cure the

16 deficiency." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 935 (9th Cir. 2011)

17 (alteration and internal quotation marks omitted).

18     In deciding a Rule 12(b)(6) motion to dismiss, a court may review the face of

19 the complaint, documents attached to the complaint or incorporated therein, and

20 documents subject to judicial notice.  *Harris v. Amgen, Inc.*, 770 F.3d 865, 874

21 (9th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

22

23 Defendants intend to file counterclaims against Aliya for its improper and unlawful
   termination of the Third Agreement and the parties' entire contractual relationship.

24     Furthermore, Aliya mischaracterizes and misleadingly omits material facts

25 throughout its first amended complaint.  For instance, Aliya nowhere mentions that
   it rejected Defendants' proposal, and subsequently interfered with Defendants'

26 efforts, to retain a mutually agreed-upon third party to collect receivables and

27 maintain the proceeds thereof in a separate escrow account to preserve the status
   quo during the pendency of the lawsuit.  These facts will also serve as the basis for

28 Defendants' anticipated counterclaims against Aliya.

322 (2007); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  Although the court must accept all factual allegations pleaded in the complaint as true, it may not accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007); *Moss v. United States Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

Moreover, where allegations in a complaint are directly contradicted or undermined by exhibits attached to the complaint, the court must disregard the allegations in the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."); *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."); *accord Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

Further, under Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (alteration and internal quotation marks omitted).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (internal quotation marks omitted).  "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Id.*  Further, for allegations of fraud by false promise, "the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

IV.   **ARGUMENT**

A.   **Aliya Has Failed to State a Claim of Fraudulent Inducement.**

In Nevada, the essential elements of a fraudulent inducement claim are: (1) A false representation made by the defendant; (2) [the] defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) [the] defendant['s intent] to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation.

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (1998).  Aliya has failed to adequately plead fraudulent inducement for at least the following seven reasons.

*First*, Aliya's fraudulent inducement claim is nothing more than a contract claim masquerading as a tort claim.  The claim is based on the allegation that, to induce Aliya to enter into the Third Agreement with CTB, Nickell told Aliya's manager, Erik Nord, that the physicians who referred toxicology services covered by CTB's receivables were within MPNs when "the vast majority" of them were not.[4]  (*See* FAC ¶¶ 119, 122.)  But Aliya does not allege any independent injury resulting from Nickell's alleged misrepresentations (FAC ¶ 123) — nor can it do so.  Rather, Aliya's only possible injury concerning the MPN issue arises from and is subsumed by CTB's alleged failure to repurchase the receivables that Aliya rejected under Paragraph 14(f) — i.e., arising from CTB's alleged breach of that provision.  Thus, Aliya's fraudulent inducement claim fails as a matter of law.  *See Standard Platforms, Ltd. v. Document Imaging Sys. Corp.*, No. Civ. 93-20993 SW, 1995 WL 691868, at *3 (N.D. Cal. Nov. 15, 1995) (explaining that "the same

---

[4]  In California, where the parties performed the Third Agreement, an MPN is "any entity or group of providers approved as a Medical Provider Network by the Administrative Director [of the Division of Workers' Compensation]."  Cal. Code Regs. tit. 8, § 9767.1.

rationale that prohibits negligence claims for the recovery of purely economic damages also bars fraud claims that are subsumed within contractual obligations," and dismissing the plaintiff's fraudulent inducement claim because "it [did] not arise from any independent duty imposed by principles of tort law").

*Second*, and relatedly, Aliya has not pleaded any facts establishing that Nickell's supposed misrepresentations concerning the MPN status of physicians proximately caused Aliya's alleged injuries. "A plaintiff asserting fraud by misrepresentation is obliged to establish a complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom." *Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1499 (2013) (alteration and internal quotation marks omitted). "This requires a plaintiff to allege specific facts not only showing he or she actually and justifiably relied on the defendant's misrepresentations, but also how the actions he or she took in reliance on the defendant's misrepresentations caused the alleged damages." *Id.*

Here, Aliya's first amended complaint does not contain any ***nonconclusory*** factual allegations establishing ***how*** the actions that it supposedly took in reliance upon Nickell's alleged misrepresentations proximately caused Aliya's claimed tort damages.   In fact, no damages possibly could have been caused by any alleged misrepresentations by Nickell concerning the MPNs; rather, Aliya's alleged damages relating to the MPN issue (if any) could arise only out of CTB's alleged refusal to repurchase rejected receivables pursuant to Paragraph 14(f).  In other words, even if misrepresentations were made, CTB's repurchase of receivables pursuant to Paragraph 14(f) would preclude any damages.  By the same token, a breach of Paragraph 14(f), if proven, could give rise to contract damages even absent any misrepresentations.  Where, as here, the allegedly "defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation cannot be alleged and a fraud cause of action cannot be sustained." *Id.* (emphasis omitted).

*Third*, Aliya's fraud claim fails as a matter of law because the Purchase Agreement specifically contemplates the possibility of the very outcome of which Aliya now claims it was not aware.  Indeed, the Third Agreement expressly accounted for the possibility that some physicians would fall outside of applicable MPNs and gave Aliya the right (subject to certain restrictions and procedures) to reject receivables covering "[c]laims or charges requested by a physician of record that is not within the applicable [MPN]." [5]  (FAC ¶ 29, Ex. C ¶ 14(f), at 5-6.)  The inclusion in the Third Agreement of Paragraph 14(f) necessarily means that Aliya had notice that some physicians might not be within certain MPNs, thus directly contradicting Aliya's bare allegation that it was not aware of that fact.  Where, as here, an exhibit attached to the complaint is inconsistent with the bare allegations in the complaint, the exhibit controls.  *Golden State Warriors*, 266 F.3d at 988; *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 454.

Without any factual support, Aliya contends that Paragraph 14(f) "was intended to guard against the possibility that some of the referring physicians were out-of-network for some receivables, not the vast majority of them."  (FAC ¶ 122.)  But Paragraph 14(f) never addresses or even alludes to any limitation with respect to the number of non-MPN physicians contemplated by the parties.  Further, adopting Aliya's interpretation of Paragraph 14(f) would render the provision meaningless by essentially reading Paragraph 14(f) out of the Third Agreement — an outcome that the Court must avoid.  *Bielar v. Washoe Health Sys., Inc.*, 306 P.3d 360, 364 (Nev. 2013) ("A court should not interpret a contract so as to make meaningless its provisions." (internal quotation marks omitted)).

---

[5]  As set forth in CTB's and EBS's opposition to Aliya's writ applications, the parties agreed to modify the Third Agreement on November 23, 2013, agreeing to remove Paragraph 14(f) as a basis for rejecting receivables.  (*See* Docket No. 43 at 10-13.)  However, because Aliya has omitted from its first amended complaint the facts surrounding the parties' modification, Defendants are unable to raise that issue in this motion for the Court's consideration.

1    *Fourth*, a fraud claim cannot be predicated on statements that involve future

2    actions or events.  *See Coleman v. Romano*, Nos. 58597, 59257, 2014 WL 549489,

3    at *4 (Nev. Feb. 10, 2014) (citing *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592

4    (1992)).  Here, Aliya's fraudulent inducement claim necessarily hinges on future

5    actions and events — namely, the ordering of future toxicology services during the

6    five-year term of the Third Agreement by physicians not within applicable MPNs.

7    When the alleged misrepresentations were made, neither Nickell nor CTB could

8    possibly have known in advance whether the MPN status of the physicians whose

9    referrals were reflected in the receivables would change over time.  Aliya does not

10   allege otherwise, nor can it reasonably do so.  Thus, Aliya cannot possibly state a

11   fraudulent inducement claim based on any purported representations concerning

12   such physicians or their MPN status.

13       *Fifth*, Aliya has not alleged a single fact supporting its conclusory allegation

14   that "CTB and Nickell knew or should have known that virtually all of its referring

15   physicians were 'out-of-network' while they were servicing the receivables and

16   prior to the Third Agreement being executed based on the insurance company

17   denials received by CTB."  (FAC ¶ 63.)  Moreover, insurance company denials may

18   occur for any host of reasons completely unrelated to MPNs — a fact that Aliya

19   completely ignores in its first amended complaint.  Because Aliya has failed to

20   plead any factual allegations showing that Nickell knew or believed that his alleged

21   representations regarding MPNs were false or that he had an insufficient basis for

22   making them, Aliya's fraudulent inducement claim fails.  *See Grant v. Pensco Trust*

23   *Co., LLC*, No. 12-cv-06084-WHO, 2013 WL 4772673, at *4 (N.D. Cal. Sept. 3,

24   2013) ("[The plaintiff] has provided no basis for his belief that [the defendant]

25   / / /

26   / / /

27   / / /

28   / / /

1   knew that [a third party] had stolen [the plaintiff's] money.  His failure to do so is

2   fatal to his fraud claim.").[6]

3       *Sixth*, Aliya has failed to plead facts establishing that it ***justifiably*** relied on

4   Nickell's alleged misrepresentations concerning MPNs.  Moreover, the inclusion of

5   Paragraph 14(f) precludes a finding of justifiable reliance, given that the provision

6   reflects that the parties expressly acknowledged and accounted for the possibility

7   that some physicians ordering toxicology services would fall outside of MPNs.  So,

8   too, does the fact that Aliya had already purchased thousands of receivables from

9   CTB under the first and second purchase agreements (FAC ¶¶ 27-28, Exs. A-B),

10   and therefore knew the identities of the physicians who were referring the

11   toxicology services covered by the receivables and could have determined their

12   MPN status before entering into the Third Agreement.  Aliya failed to conduct

13   adequate due diligence and now seeks to hold Defendants responsible for its failure.

14       *Seventh*, to the extent that Aliya rests its fraudulent inducement claim on any

15   alleged misrepresentations by Nickell after the parties had begun performing the

16   Third Agreement (*see, e.g.*, FAC ¶¶ 64-66), Aliya has failed to plead the "who,

17   what, when, where, and how" of those supposed representations.

18       **B.**    **Aliya Has Failed to State a Fraudulent Concealment Claim.**

19       The general rule in Nevada is that an action in fraud will not lie for

20   nondisclosure.  *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998) (citing

21   *Epperson v. Roloff*, 719 P.2d 799, 803 (Nev. 1986)), *overruled in part on other*

22

---

23   [6] In its first amended complaint, Aliya adds an allegation that "Nickell had a

24   professional and/or personal relationship with many of the physicians."  (FAC ¶

25   120.)  This allegation is wholly unsupported and amounts to nothing more than bare

26   speculation.  Such conclusory, unsubstantiated allegations are not enough to allow

    Aliya's fraud claim to survive.  *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969

27   (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-

    conclusory 'factual content,' and reasonable inferences from that content, must be

28   plausibly suggestive of a claim entitling the plaintiff to relief.").

1    *grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 14-15 (Nev. 2001).  Moreover, "a

2    plaintiff who makes an independent investigation will be charged with knowledge

3    of facts which reasonable diligence would have disclosed.  Such a plaintiff is

4    deemed to have relied on his own judgment and not on the defendant's

5    representations."  *Epperson*, 719 P.2d at 803.  An exception to this general rule

6    arises when a defendant owes a duty of disclosure to the plaintiff.  *Dow Chem.*, 970

7    P.2d at 110.  Absent such a duty, however, a defendant's failure to disclose

8    information cannot constitute actionable fraud.  *Id.*  A duty to disclose may arise

9    when "the defendant alone has knowledge of material facts which are not accessible

10   to the plaintiff."[7] *Epperson*, 719 P.2d at 804.

11         Here, Aliya's fraudulent concealment claim fails for at least two reasons.

12   *First*, Defendants clearly noted in their original motion to dismiss that the duty of

13   disclosure is a necessary element of Aliya's fraudulent concealment.  (*See* Docket

14   No. 16 at 9-10.)  Remarkably, Aliya made no attempt in its first amended complaint

15   to plead a duty of disclosure (nor does it even mention the word "duty"), thus

16   confirming that no such duty exists.

17         *Second*, Aliya has failed to allege that any material facts were outside its "fair

18   and reasonable reach."  *See Dow Chem.*, 970 P.2d at 110 ("[A] duty to disclose may

19   arise from the existence of material facts peculiarly within the knowledge of the

20   party sought to be charged and not within the fair and reasonable reach of the other

21   party." (internal quotation marks omitted)).  The three material facts that Aliya

22   accuses CTB and Nickell of concealing are that some physicians allegedly were

23   outside the MPNs, certain receivables allegedly had already been settled, and

24

25

26   [7]  A duty to disclose may exist also when the parties are in a fiduciary or
     confidential relationship.  *Dow Chem.*, 970 P.2d at 110.  Aliya does not — and
27   cannot — allege the existence of any such relationship between Aliya on the one
     hand, and CTB or Nickell on the other hand.
28

1   certain receivables allegedly were being "diverted."  (FAC ¶¶ 126-128.)  None of

2   these allegations is sufficient to state a claim for fraudulent concealment.

3         As noted above, Aliya cannot allege in good faith that it was unaware that

4   some physicians might fall outside of workers' compensation MPNs because the

5   Third Agreement specifically accounts for that possibility by providing that one of

6   the criteria based upon which Aliya could reject receivables is "[c]laims or charges

7   requested by a physician of record that is not within the applicable . . . MPN."

8   (FAC, Ex. C ¶ 14(f), at 5-6.)  Thus, Aliya was plainly on notice before entering into

9   the Third Agreement that some physicians would fall outside of certain MPNs.

10       Aliya also does not allege that it did not have the opportunity to investigate

11   the MPN issue, whether during the negotiations leading up to the execution of the

12   Third Agreement or during the course of the parties' performance thereof.  Aliya is

13   a sophisticated entity that engaged in an arm's length negotiation and could have

14   easily performed adequate due diligence.  Instead, Aliya eschewed its duty to

15   investigate the transaction and now seeks to place the blame for its failure on

16   Defendants' doorstep.  Indeed, Aliya had already purchased thousands of

17   receivables from CTB pursuant to the first and second purchase agreements and

18   thus had ample opportunity to research which physicians were within MPNs before

19   entering into the Third Agreement.

20       Likewise, because of the nature of healthcare receivables and how they are

21   processed and serviced, Aliya also was on notice that a small percentage of

22   purchased receivables might involve already-settled claims.  Indeed, Paragraph

23   14(d) of the Third Agreement provides that Aliya could reject any receivable that

24   had been settled prior to purchase.  (FAC, Ex. C ¶ 14(d), at 5.)

25       Finally, although Defendants deny that any "diversion" of receivables has

26   occurred, Aliya specifically accounted for the possibility of diversion by requiring

27   EBS to enter into a covenant not to compete with Aliya and a covenant to

28   indemnify Aliya.  (FAC, Exs. D-E.)  CTB could not possibly have "concealed" an

1  outcome for which the parties expressly contracted.  If Aliya now alleges that

2  diversion occurred, it may sue EBS for breach of contract (and has done so).  But

3  Aliya may not try to twist a simple contract claim to gain leverage in this dispute.

4  **C.**     **Aliya Has Failed to State a Negligent Misrepresentation Claim.**

5      To prevail on a negligent misrepresentation claim under Nevada law, a

6  plaintiff must prove that:  (1) the defendant made a false representation; (2) the

7  representation was made in the course of the defendant's business or in any action

8  in which the defendant has a pecuniary interest; (3) the representation was for the

9  guidance of others in their business transactions; (4) the representation was

10  justifiably relied upon; (5) that such reliance resulted in pecuniary loss to the

11  relying party; and (6) that the defendant failed to exercise reasonable care or

12  competence in obtaining or communicating the information.  *G.K. Las Vegas Ltd.*

13  *P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006).

14  Further, a plaintiff must plead negligent misrepresentation with specificity in

15  accordance with Rule 9(b).  *Id.*

16      As discussed above, Aliya cannot state a claim of fraudulent inducement

17  based on any alleged intentional misrepresentations by Nickell because, among

18  other reasons, Aliya has failed to plead facts sufficient to satisfy the elements of

19  justifiable reliance, proximate causation, and damages.  (*See* Part IV.A *supra*.)

20  Because Aliya must establish those same elements to prevail on its negligent

21  misrepresentation claim, that claim fails for the same reasons.

22      Moreover, Aliya makes no attempt to allege a duty of care (nor does it even

23  mention the word "duty") in the first amended complaint.  Under Nevada law, a

24  duty of care arises only when the plaintiff and defendant stand in a special

25  relationship and the harm caused by the defendant's conduct was reasonably

26  foreseeable.  *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 244 (Nev.

27  2011).  Aliya has not pleaded any factual allegations that support the existence of a

28  special relationship or that would support a finding of reasonable foreseeability

1   sufficient to establish the existence of a duty of care.  Aliya's negligent

2   misrepresentation claim therefore fails.  *See, e.g.*, *Hunt v. Wells Fargo Bank, NA*,

3   576 F. App'x 693, 694 (9th Cir. 2014) ("Dismissal of [the plaintiff]'s fraudulent

4   concealment and negligent misrepresentation claims was proper because [the

5   defendant] did not owe [the plaintiff] a duty of care.").

6   **D.    Aliya Has Failed to State a Promissory Fraud Claim.**

7   A promissory fraud claim brought pursuant to Nevada law requires proof of

8   five essential elements:

9   [(1)] A false representation made by the defendant; [(2)] Defendant's

10   knowledge or belief that the representation is false (or insufficient

11   basis for making the representation); [(3)] Defendant's intention to

12   induce the plaintiff to act or to refrain from acting in reliance upon the

13   misrepresentation; [(4)] Plaintiff's justifiable reliance upon the

14   misrepresentation; and [(5)] Damage to the plaintiff resulting from

15   such reliance.

16   *Bulbman, Inc.*, 825 P.2d at 592.  These elements are identical to the elements of a

17   standard fraud claim because, in Nevada, "[p]romissory fraud . . . is simply a fraud

18   claim where the fact about which the tortfeasor deceives the victim is the

19   tortfeasor's intention not to perform from the outset."  *Heldenbrand v. Multipoint*

20   *Wireless, LLC*, No. 2:12-cv-01562-RCJ-PAL, 2012 WL 5198479, at *4 (D. Nev.

21   Oct. 18, 2012).

22   Aliya's promissory fraud claim fails for at least three reasons.  *First*, to the

23   extent that the promissory fraud claim is identical to or overlaps with Aliya's

24   fraudulent inducement claim, it fails for the same reasons as that claim.

25   *Second*, the mere allegation that a promise was made and not fulfilled is

26   insufficient to establish promissory fraud.  *Bulbman, Inc.*, 825 P.2d at 592 ("[T]he

27   mere failure to fulfill a promise or perform in the future . . . will not give rise to a

28   fraud claim absent evidence that the promisor had no intention to perform at the

1  time the promise was made.").  Rather, "something more than nonperformance is

2  required to prove the defendant's intent not to perform his promise."  *Tenzer v.*

3  *Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985) (internal quotation marks omitted)

4  (explaining that the plaintiff "must produce evidence of the promisor's intent to

5  mislead him"); *accord Bulbman, Inc.*, 825 P.2d at 592.

6      Here, Aliya's promissory fraud claim is premised on nothing more than

7  CTB's alleged breach of the Third Agreement — i.e., CTB's supposed failure to

8  fulfill a promise.  (*See* FAC ¶ 66.)  This is confirmed by the fact that Aliya pleads,

9  "on information and belief," mere legal conclusions in support of the intent element

10  of its claim.  (*See* FAC ¶¶ 136-137.)  As noted above, legal conclusions cast as

11  factual allegations are insufficient to preclude dismissal of invalid claims.  *Moss*,

12  572 F.3d at 969.  As is apparent from the face of the first amended complaint, Aliya

13  has failed to plead any facts, let alone specific facts sufficient to satisfy Rule 9(b)'s

14  heightened pleading standard, regarding any purported intent by CTB to refuse to

15  perform the Third Agreement.

16      *Third*, Aliya's promissory fraud claim against Nickell individually fails

17  because Nickell was not a party to the Third Agreement.  (FAC ¶ 29, Ex. C at 1.)

18  Just as Aliya may not sue Nickell in his individual capacity for an alleged breach of

19  the Third Agreement (and has not done so), Aliya cannot sue Nickell in his

20  individual capacity for alleged promissory fraud relating to that Agreement.

21  Nickell did not make any promises to Aliya, and thus cannot be sued for

22  promissory fraud in his individual capacity.

23      **E.    Aliya Has Failed to State a Conversion Claim.**

24      Nevada law defines conversion as "a distinct act of dominion wrongfully

25  exerted over another's personal property in denial of, or inconsistent with his title

26  or rights therein or in derogation, exclusion, or defiance of such title or rights."

27  *Wantz v. Redfield*, 326 P.2d 413, 414 (1958).  "Moreover, an act, to be a

28  conversion, must be essentially tortious; a conversion imports an unlawful act, or an

act which cannot be justified or excused in law." *Id.* (internal quotation marks omitted).  "An exercise of the rights of ownership sufficient to constitute conversion is present when a tortfeasor takes possession, sells the property, and pockets the proceeds of the sale." *Pelletier v. Pelletier*, 742 P.2d 1027, 1028 (1987) (citing *Wantz*, 326 P.2d at 414).

Aliya's conversion claim fails for at least the following two reasons.  *First*, the conversion claim is nothing more than a disguised breach of contract claim.  Paragraph 8 of the Third Agreement provides that CTB must send to Aliya checks that CTB receives as remuneration for receivables purchased by Aliya.  (FAC, Ex. C § 8, at 3-4.)  Aliya alleges that CTB deposited remuneration checks in its own account instead of sending them to Aliya in violation of the Third Agreement.  (FAC ¶ 11.)  This allegation forms part of the basis for Aliya's breach of contract claim against CTB, as Aliya itself admits.  (*See e.g.* FAC ¶¶ 113-115 ("CTB's conduct also violates the parties' express agreement . . . .")).  It is also the **sole** factual basis for Aliya's conversion claim.  (FAC ¶¶ 157-158.)  Accordingly, Aliya's conversion claim is wholly duplicative of, and subsumed by, its breach of contract claim against CTB and fails for that reason.  *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45 (2010) ("[A] mere contractual right of payment, without more, will not suffice" for conversion (internal quotation marks omitted)).

*Second*, Aliya's conversion claim arises solely out of CTB's alleged withholding of "checks" constituting payments on certain receivables that CTB allegedly has received during the pendency of the litigation.  (FAC ¶¶ 11, 156-158.)  But Nevada courts recognize that money may be the subject of a conversion claim only if a specific and definite sum is capable of identification.  *See, e.g.*, *Hester v.*

/ / /

/ / /

/ / /

/ / /

1  *Vision Airlines, Inc.*, No. 2:09-CV-0117-RLH-RJJ, 2011 WL 856871, at *3 (D.

2  Nev. Mar. 9, 2011).[8]

3        Here, Aliya does not allege any specific sums owed.  Rather, Aliya relies

4  upon vague and ambiguous qualifiers that only confirm that it cannot identify a

5  specific and definite amount.  (*See, e.g.*, FAC ¶ 11 ("***Based on information and***

6  ***belief***, the amount unlawfully withheld by Nickell and CTB ***currently exceeds***

7  $600,000."); *see also id.* ¶¶ 89, 99.)  Such generalizations and approximations are

8  insufficient to support a conversion claim.  *See, e.g.*, *Vu v. Cal. Commerce Club,*

9  *Inc.*, 58 Cal. App. 4th 229, 235 (2007) (holding that allegations that the plaintiffs

10  lost "approximately $1.4 million" and "approximately $120,000," respectively, did

11  not satisfy the requirement of a definite sum capable of identification).

12

13  _____

14  [8]  It does not appear that the Nevada Supreme Court has ever specifically addressed

15  whether a general allegation of money owed is sufficient to give rise to a
conversion claim.  But that is the prevailing rule under the laws of many other

16  jurisdictions, including California, which "is especially persuasive authority in

17  Nevada," *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 n.4 (D. Nev.
2013).  *See, e.g.*, *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &*

18  *Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007) ("Money cannot be the subject of

19  a cause of action for conversion unless there is a specific, identifiable sum involved
. . . ." (internal quotation marks omitted)); *accord In re Wal-Mart Wage & Hour*

20  *Employment Practices Litig.*, 490 F. Supp. 2d 1091, 1102-13 (D. Nev. 2007)

21  (applying the laws of Delaware, Montana, Alaska, Hawaii, Maine, Wyoming, and
Nebraska); *Benson Pump Co. v. S. Cen. Pool Supply, Inc.*, No. 3:02-CV-0414-

22  RAM, 2006 WL 845775, at *11 (D. Nev. Mar. 28, 2006) (applying Illinois law).

23       Where, as here, "the state's highest court has not decided an issue, the task of
the federal courts is to predict how the state high court would resolve it."  *Giles v.*

24  *Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (internal

25  quotation marks omitted).  "In answering that question, . . . court[s] look[] for
guidance to decisions by intermediate appellate courts of the state and by courts in

26  other jurisdictions."  *Id.* (internal quotation marks omitted).  Here, the Nevada

27  Supreme Court is highly likely to follow the lead of California and other
jurisdictions and hold that a claim of conversion for money requires a showing of a

28  specifically identifiable sum.

**F.      Aliya Has Failed to State a Claim of Intentional Interference with Contractual Relations.**

"In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).  Under Nevada law, "a party cannot, as a matter of law, tortiously interfere with its own contract." *Blanck v. Hager*, 360 F. Supp. 2d. 1137, 1154 (D. Nev. 2005) (citing *Bartsas Realty, Inc. v. Nash*, 402 P.2d 650, 651 (Nev. 1965)).  Likewise, "agents acting within the scope of their employment, i.e. the principal's interest, do not constitute intervening third parties, and therefore cannot tortiously interfere with a contract to which the principal is a party."[9] *Id.* (citing *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911-12 (D. Nev. 1993)).

Here, Aliya alleges that Nickell interfered with the Third Agreement by "caus[ing] CTB to divert business to other Nickell Companies, prevent[ing] CTB from performing its obligations under the Third Agreement, or [making] performance more expensive or difficult."  (FAC ¶ 166.)  But, the agreements attached to the complaint confirm that Nickell is CTB's president.  (FAC ¶ 27-29, Ex. A at 9, Ex. B at 12, Ex. C at 14.)  Accordingly, Nickell is CTB's agent and, therefore, cannot be held liable for any alleged intentional interference with his principal's (CTB's) contracts.

Aliya's only attempt in the first amended complaint to address the dispositive fact that Nickell is CTB's agent is its allegation that "when Nickell was diverting

_____

[9]  The rule in Nevada is consistent with California law.  *See Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990) ("It is . . . well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract.").

1  business from CTB to the Doe Defendants, he was acting outside the course and

2  scope of any capacity he had with CTB."  (FAC ¶ 167.)  This unexplained and

3  unsupported allegation is nothing more than a legal conclusion masquerading as a

4  factual allegation, and therefore must be disregarded.  *See Moss*, 572 F.3d at 969.

5        **G.**    **Aliya Has Failed to State a "Constructive Trust" Claim.**

6        Aliya asks the Court to impose a constructive trust "over payments that

7  properly belong to Aliya, requiring the transfer of the funds to Aliya."  (FAC

8  ¶ 191.)  The Court should dismiss Aliya's constructive trust "claim" for at least two

9  reasons.

10        *First*, under Nevada law, a constructive trust is a remedial device, not a

11  stand-alone claim.  *See Locken v. Locken*, 650 P.2d 803, 804-05 (Nev. 1982) ("A

12  constructive trust is a remedial device by which the holder of legal title to property

13  is held to be a trustee of that property for the benefit of another who in good

14  conscience is entitled to it.").

15        *Second*, imposition of a constructive trust under Nevada law requires proof

16  that, among other things, "a confidential relationship exists between the parties."

17  *Waldman v. Maini*, 195 P.3d 850, 857 (Nev. 2008) (alteration and internal

18  quotation marks omitted).  No confidential relationship has ever existed between

19  CTB and Aliya, and Aliya does not allege any facts to the contrary.  Indeed, Aliya's

20  allegations demonstrate that Aliya and CTB are both sophisticated business entities

21  that negotiated at arm's length and voluntarily entered into a series of purchase

22  agreements.  Under such circumstances, a confidential relationship does not exist as

23  a matter of law.  *Butcher v. Advanced Mineral Techs. Inc.*, No. 2:10-CV-01802-

24  PMP-LRL, 2011 WL 810256, at *6 (D. Nev. Mar. 2, 2011) ("Ordinarily, an arms-

25  length contractual relationship will not support a finding of a fiduciary or

26  confidential relationship." (citing *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963

27  P.2d 465, 477 (Nev. 1998))); *Long v. Towne*, 693 P.2d 528, 530 (Nev. 1982)

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20

1   ("Generally, no fiduciary obligations exist between a buyer and seller of

2   property.").

3       **H.      Aliya Has Failed to State an Unfair Competition Claim.**

4       In its first amended complaint, Aliya has added an unfair competition claim

5   under California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), which

6   prohibits unlawful, fraudulent, or unfair business practices.  Cal. Bus. & Prof. Code

7   § 17200.  The Court should dismiss Aliya's UCL claim for at least two reasons.

8       *First,* the Third Agreement includes a choice-of-law provision that clearly

9   states that "this Agreement shall be governed by the laws of the State of Nevada."

10  (FAC ¶ 29, Ex. C, at 13).  Aliya has readily conceded from the onset of these

11  proceedings that "Nevada law governs this dispute."  (*See, e.g.*, FAC ¶ 90

12  ("governing Nevada law"); Docket No. 8 at 1 n.1 ("In this case, [Aliya and CTB]

13  agreed that Nevada law governed their relationship."); Docket No. 37 at 4 n.2

14  (same); Docket No. 38 ¶ 3 n.1 (same).)  Because the UCL is a California statute, it

15  is inapplicable here.  *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842,

16  862 (N.D. Cal. 2000) (dismissing a UCL claim where the "construction,

17  interpretation and performance" of the agreement at issue was governed by New

18  Jersey law); *Melt Franchising, LLC v. PMI Enters., Inc.*, No. CV 08-4148 PSG

19  (MANx), 2009 WL 32587, at *2-3 (C.D. Cal. Jan. 2, 2009) (dismissing a UCL

20  claim where the parties' contract contained a valid Massachusetts choice-of-law

21  provision); *see also Cont'l Airlines v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059,

22  1070 (E.D. Cal. 2006) ("A valid choice-of-law provision selecting another state's

23  law is grounds to dismiss a claim under California's UCL.").

24      *Second*, Aliya has not pleaded any facts sufficient to entitle it to restitution or

25  injunctive relief — the only remedies available under the UCL.  *Korea Supply Co.*

26  *v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  To prove entitlement to

27  restitution, Aliya must show that Defendants received and unjustly retained a

28  benefit at Aliya's expense.  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726

1   (2000).  The gravamen of an unjust enrichment claim is that the defendant has

2   received something to which he was not entitled, and thus unjustly benefitted while

3   the plaintiff unjustly suffered.  *Cal. Emergency Physicians Med. Grp. v. PacifiCare*

4   *of Cal.*, 111 Cal. App. 4th 1127, 1136 (2003).

5          Here, Aliya does not allege a single fact establishing that Defendants have

6   benefitted in any way by supposedly "authorizing, participating in, and directing the

7   withholding and use of all payments on receivables that Aliya purchased from

8   CTB."  (FAC ¶ 178.)  Accordingly, Aliya has failed to establish that it is entitled to

9   restitutionary relief in this action.  Moreover, to the extent that Aliya seeks specific

10  performance of the Third Agreement under the UCL, such a remedy is unavailable

11  because Aliya terminated the Third Agreement on November 5, 2014.  (FAC ¶ 87.)

12  Finally, to the extent Aliya requests an injunction "restraining and enjoining

13  Defendants from wrongfully depositing checks belonging to Aliya and ordering

14  them to turn-over all proceeds collected on receivables . . . [and] from taking any

15  collection activity on any receivable belonging to Aliya," such injunctive relief is

16  premised solely on the viability of Aliya's tort claims, which as discussed above,

17  fail for multiple reasons and should be dismissed with prejudice.

18   **I.      Aliya Has Failed to State a Breach of Contract Claim Against**

19          **EBS.**

20          Aliya's breach of contract claim against EBS arises solely under a "Covenant

21  to Indemnify" between EBS and Aliya dated March 28, 2013.  (FAC. ¶ 30, Ex. E.)

22  That claim is not ripe and fails as a matter of law because, under both the terms of

23  the Covenant to Indemnify and Nevada law, EBS's indemnification obligations

24  cannot be triggered until Aliya actually proves at trial that CTB breached the Third

25  Agreement.  Indeed, the Covenant to Indemnify provides that EBS

26          hereby agrees to indemnify and hold harmless [Aliya] and its

27          successors and assigns . . . for all losses, damages, liabilities and

28          claims, and all fees, costs and expenses of any king related thereto . . .

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

incurred, arising out of, based upon, or resulting from . . . (b) the

breach of, or failure to perform by, [CTB] of any of its agreements,

covenants or obligations contained in or made pursuant to the [Third]

Agreement, or the breach of, or failure to perform by, [EBS] of any of

its agreements, covenants or obligations contained in or made herein.

(FAC, Ex. E at 1.)  Furthermore, Nevada law is clear that Aliya must establish a

breach by CTB before it may seek indemnification from EBS.  *See Spittler v.*

*Washoe County*, No. 61300, 2014 WL 6449306, at *2 (Nev. Nov. 14, 2014) ("A

cause of action for indemnity does not accrue until payment on a judgment or

settlement agreement has been made." (citing *Rodriguez v. Primadonna Co.*, 216

P.3d 793, 801 (2009)); *Mandalay Corp. v. Eighth Judicial Dist. Ct. of Nev.*, No.

61189, 2013 WL 7159009, at *2 (Nev. Nov. 12, 2013) (citing *Rodriguez*, 216 P.3d

at 801)); *see also Aetna Cas. & Sur. Co. v. Aztec Plumbing Corp.*, 796 P.2d 227,

229 (Nev. 1990) ("A cause of action for indemnity . . . accrues when payment has

been made.").

Aliya has not yet proved a breach of the Third Agreement by CTB, and

therefore, cannot sue EBS for breach of the Covenant to Indemnify.  Accordingly,

Aliya's breach of contract claim against EBS should be dismissed without leave to

amend.

**J.      Aliya's Claims Should Be Dismissed Without Leave to Amend**
**Because Aliya Failed in Its First Amended Complaint to Cure the**
**Numerous Defects Discussed Above, and Cannot Possibly Cure**
**Them in Subsequent Pleadings.**

As noted above, "[a] district court may deny a plaintiff leave to amend if it

determines that [the] allegation of other facts consistent with the challenged

pleading could not possibly cure the deficiency."  *Alvarez*, 656 F.3d at 935

(alteration and internal quotation marks omitted).  For the reasons discussed above,

many of Aliya's claims fail as a matter of law and therefore cannot be cured by

1   subsequent amendment.  Moreover, Aliya has already had two chances to plead

2   viable tort claims, but has failed to do so each time, thereby confirming that those

3   claims should be dismissed.  Accordingly, Defendants respectfully request that the

4   Court grant this motion and dismiss Aliya's first through fourth and sixth through

5   tenth claims without leave to amend.

6   **V.     CONCLUSION**

7          For all of the foregoing reasons, Defendants' respectfully request that the

8   Court grant their motion in its entirety and dismiss Aliya's first through fourth and

9   sixth through tenth claims without leave to amend.

10

11                                         Respectfully submitted,

12  Dated:  January 30, 2015              MANATT, PHELPS & PHILLIPS, LLP
                                          Steven M. Goldberg
13                                        Emil Petrossian

14

15                                        By:_____/s/  Emil Petrossian_____

16                                        Emil Petrossian
                                          *Attorneys for Defendants*
17                                        ROBERT P. NICKELL,
                                          COMPREHENSIVE TOXICOLOGY
18                                        BILLING, LLC, and EXEC BILLING
                                          SERVICES, LLC

19

20

21

22  313180972

23

24

25

26

27

28