KEVIN M. YOPP (Bar No. 218204)
kevin.yopp@yopplegal.com
LAW OFFICES OF KEVIN M. YOPP
A Professional Corporation
401 Wilshire Boulevard
12th Floor Penthouse
Santa Monica, California 90401-1456
Telephone: (310) 439-5000
Facsimile: (310) 496-1955

Attorneys for Plaintiff and Counterdefendant
Aliya Medcare Finance, LLC and
Third-Party Defendants Erik Nord, Henrik
Sten, Comprehensive Toxicology
Services, Inc., Upton Park Financial, LLC,
and Allan Alvarado

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIYA MEDCARE FINANCE, LLC, a Nevada limited liability company;<br><br>Plaintiff,<br><br>v.<br><br>ROBERT P. NICKELL, an individual; COMPREHENSIVE TOXICOLOGY BILLING, LLC, a California limited liability company; EXEC BILLING SERVICES, LLC, a California limited liability company; and DOES 1-10, inclusive;<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM AND THIRD-PARTY COMPLAINT | Case No. CV 14-07806 MMM(SHx)<br><br>**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTIONS TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT**<br><br>Hearing Date:  July 13, 2015<br>Time:              10:00 a.m.<br>Place:             Courtroom 780<br>                       (Roybal Building) |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that, pursuant to Rule 201 of the Federal Rules of Evidence, Plaintiff and Counterdefendant Aliya Medcare Finance, LLC, and Third Party Defendants Erik Nord, Henrik Sten, Comprehensive Toxicology Services, Inc., Upton Park Financial, LLC, and Allan Alvarado (collectively "Moving Parties") hereby request that this Court take judicial notice of the following documents in support of their Motion to Dismiss the Counterclaim and Third-Party Complaint.  All letter references correspond to the attached exhibits:

F.      The Covenant Not to Compete signed by Robert Nickell on March 28, 2013 and executed in connection with the parties' Third Agreement.

G.      The Indemnity signed by Robert Nickell on March 28, 2013 and executed in connection with the parties' Third Agreement.

H.      A W-9 singed by Third-Party Defendant Henrik Sten.  This document was attached as Exhibit D to the Declaration of Robert Nickell, filed January 26, 2015.  *See* Dkt. # 43-2.

I.      Confirmation Letters from United States Postal Service re December 2014 change of address filed by Third-Party Defendant Comprehensive Toxicology Services, Inc.

The Court should consider these documents under the incorporation by reference doctrine, which "permits a district court to consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings." *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999); *see Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) ("[The Ninth Circuit] ha[s] extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its

motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint," citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

Exhibits F and G were executed the same day as, and in conjunction with, the Third Agreement, which CTB relies upon in its Counterclaim and Third-Party Complaint.  Indeed, CTB alleges that Aliya breached the Third Agreement.  CTB alleges putative wrongdoing based on Exhibits H and I, so they are also properly considered by the Court.

DATED:  June 29, 2015          Respectfully submitted,

                              LAW OFFICES OF KEVIN M. YOPP
                              A Professional Corporation


                              By:       /s/ Kevin M. Yopp
                                  Kevin M. Yopp
                                  Attorneys for Plaintiff and
                                  Counterdefendant Aliya Medcare Finance,
                                  LLC and Third-Party Defendants Erik
                                  Nord, Henrik Sten, Comprehensive
                                  Toxicology Services, Inc., Upton Park
                                  Financial, LLC, and Allan Alvarado

EXHIBIT F

## COVENANT NOT TO COMPETE

This Covenant Not To Compete is made out by Exec Billing Services, LLC (together with its affiliates, successors and assigns, "**Executive Billing**"), in connection with that certain Healthcare Insurance Receivable Agreement (the "**Purchase Agreement**"), by and between, on the one hand, Aliya Medcare Finance, LLC, a NV limited liability company, and its successors and/or assigns (referred to herein as "**Buyer**"), and, on the other hand, Comprehensive Toxicology Billing LLC, and its successors and/or assigns (the "**Seller**").

Any capitalized term used herein that is not otherwise defined shall have the same meaning ascribed to such term in the Purchase Agreement.

Pursuant to the Purchase Agreement, Buyer will purchase all Receivables that belong to Seller, whether currently existing or that may be originated, generated or billed until December 31, 2017, which constitutes substantially all the assets of Seller. Executive Billing, being the sole owner in interest of Seller (whether directly or indirectly), hereby acknowledges that it and its members will benefit from the execution of the Purchase Agreement and the consummation of the Transactions described therein and hereby represents, covenants and agrees as follows:

To induce Buyer to enter into the Purchase Agreement, Executive Billing hereby agrees that it and its managers, including Robert Nickell, will (a) *continue to conduct the business of marketing, billing and servicing drug urinalysis as ordered by the patient's physician of record and managing and collecting payments on the healthcare insurance receivables that are the result of thereof* (collectively, the "**Business**"), and to continue to conduct the Business solely through the Seller until the end of the last Transaction Month, and (b) for the duration of the Purchase Agreement and until the end of the last Transaction Month, it and its managers, including Robert Nickell, will, directly and indirectly, (i) refrain from conducting any business that is substantially similar to the Business (inclusive of any urinalysis), except through the Seller and in a way that results in all generated, originated or billed healthcare insurance receivables based on such substantially similar business or the Business being included in the Receivables, (ii) engage in any business for its own account or otherwise derive any benefit from any business that is substantially similar to the Business (inclusive of any urinalysis), (iii) enter the employ of, or render any services to, any person engaged in any business that is substantially similar to the Business (inclusive of any urinalysis), or (iv) acquire a financial interest in any entity or person engaged in any business that is substantially similar to the Business (inclusive of any urinalysis) as an individual, partner, member, shareholder, officer, director, principal, agent, trustee or consultant.

For the avoidance of doubt, Executive Billing shall be responsible for and held liable towards Buyer to the fullest extent possible for any actions or omissions of its managers, including Robert Nickell, should any such person act in a way that would constitute a breach of this Covenant Not To Compete if such actions or omissions had been taken by Executive Billing.

1

Executive Billing represents that Executive Billing (i) is familiar with the foregoing covenants not to compete, (ii) is fully aware of Executive Billing's obligations hereunder, (iii) agrees to the reasonableness of the length of time, scope and geographic coverage of the foregoing covenants not to compete, and (iv) agrees that such covenants are necessary to protect Buyer's confidential and proprietary information, good will, assets acquired pursuant to the Purchase Agreement, business and relations. Executive Billing agrees that a breach of any of the foregoing covenants would cause immediate and irreparable harm to Buyer that would be difficult or impossible to measure, and that damages to Buyer for any such injury would therefore be an inadequate remedy for any such breach. Accordingly, Executive Billing agrees that if Executive Billing breaches any term of any of the covenants set forth in such sections, Buyer shall be entitled, in addition to and without limitation upon all other remedies Buyer may have under this Agreement, at law or otherwise, to obtain injunctive or other appropriate equitable relief to restrain any such breach upon a showing by Buyer of the legal requirements to obtain such relief.

All questions concerning the performance, construction, validity and interpretation of this Agreement shall be governed by the laws of the State of Nevada and any action at law, suit in equity, or other judicial or non-judicial proceeding for the enforcement of this Agreement shall be instituted in the courts located in the State of Nevada, County of Clark, and each party waives any objection to venue therein or any defense based on forum non conveniens or similar theories.

*[Signature page follows.]*

2

**IN WITNESS WHEREOF,** I have hereunto affixed my signature to this
Covenant Not To Compete

**Exec Billing Services, LLC**

_RPn_                    7-28-247

Name: Robert Nickell
Title: CEo  Exec Billy Serv LLc

**AGREED AND ACKNOWLEDGED:**

**Aliya MedCare Finance, LLC**

Name: Erik Nord
Title: Manager

3

EXHIBIT G

## COVENANT TO INDEMNIFY

This Covenant to Indemnify is made out by Exec Billing Services, LLC (together with its affiliates, successors and assigns, "**Executive Billing**"), in connection with that certain Healthcare Insurance Receivable Agreement (the "**Purchase Agreement**") by and between, on the one hand, Aliya Medcare Finance, LLC, a NV limited liability company, and its successors and/or assigns (referred to herein as "**Buyer**"), and, on the other hand, Comprehensive Toxicology Billing LLC, and its successors and/or assigns (the "**Seller**").

Any capitalized term used herein that is not otherwise defined shall have the same meaning ascribed to such term in the Purchase Agreement.

Pursuant to the Purchase Agreement, Buyer will purchase all Receivables that belong to Seller, whether currently existing or that may be originated, generated or billed until December 31, 2017. Executive Billing, being the sole owner in interest of Seller (whether directly or indirectly), hereby acknowledges that it will benefit from the execution of the Purchase Agreement and the consummation of the Transactions described therein and hereby represents, covenants and agrees as follows:

To induce Buyer to enter into the Purchase Agreement, Executive Billing hereby agrees to indemnify and hold harmless Buyer and its successors and assigns (each an "**Indemnified Party**") for all losses, damages, liabilities and claims, and all fees, costs and expenses of any kind related thereto (including, without limitation, any and all reasonable legal fees) incurred, arising out of, based upon, or resulting from (a) the inaccuracy or incompleteness as of the date hereof, as of the date any Receivable is assigned to Buyer, or as of the date of payment of any Monthly Funding Amount, of any representation or warranty of the Seller which is contained in or made pursuant to the Purchase Agreement or by Executive Billing as set forth herein, or (b) the breach of, or failure to perform by, the Seller of any of its agreements, covenants or obligations contained in or made pursuant to the Purchase Agreement, or the breach of, or failure to perform by, Executive Billing of any of its agreements, covenants or obligations contained in or made herein.

Executive Billing hereby represents and warrants that (i) it is the owner of 100% of the interest in Seller, whether directly or indirectly, (ii) it is in the business of *marketing, billing and servicing drug urinalysis as ordered by the patient's physician of record and managing and collecting payments on the healthcare insurance receivables that are the result of thereof* (collectively, the "**Business**"), and certain other similar businesses <u>not</u> related to the Business that results in the creation of healthcare insurance receivables, (iii) it will continue to conduct the Business and to do so solely through the Seller until the end of the last Transaction Month, (iv) for the duration of the Purchase Agreement and until the end of the last Transaction Month, it will, directly and indirectly, refrain from conducting, being involved in or providing any services to, any business that is substantially similar to the Business (inclusive of any urinalysis) except through the Seller and in a way that results in all generated, originated or billed healthcare insurance receivables based on the Business or such substantially similar

1

business being included in the Receivables, (v) it has no reason to believe that the total Face Amount of all Future Receivables will be less than $40 million per annum to and including 2017, and (vi) it is not aware of any proposed legislation, worker's compensation regulation or other government mandate that would have a material impact on the Business or its profitability.

The failure of an Indemnified Party to notify Executive Billing of a claim hereunder will not relieve Executive Billing from any liability hereunder unless, and only to the extent that, (i) Executive Billing did not otherwise learn of such claim and (ii) such failure or delay results in forfeiture by Executive Billing of substantial defenses, rights or insurance coverage.

All questions concerning the performance, construction, validity and interpretation of this Agreement shall be governed by the laws of the State of Nevada and any action at law, suit in equity, or other judicial or non-judicial proceeding for the enforcement of this Agreement shall be instituted in the courts located in the State of Nevada, County of Clark, and each party waives any objection to venue therein or any defense based on forum non conveniens or similar theories.

Executive Billing hereby designates itself as its agent to receive service of process in any action, suit or other proceeding under this instrument, and to receive any notice pursuant to this instrument.  Such service of process and notice delivery shall be accomplished by sending by delivery by Federal Express, certified mail or similar means, a notice hereunder, as applicable, to the attention of Executive Billing or one of the appointed agents at the respective address set forth below.

*[Signature page follows.]*

**IN WITNESS WHEREOF**, I have hereunto affixed my signature to this Covenant to Indemnify.

**Exec Billing Services, LLC**

Name: Robert Nickell
Title: Chief Executive Officer

| | |
|---|---|
| Address: | 381 Van Ness Drive, Suite 1506 |
| | Torrance, CA 90501 |
| | Attention: CEO |
| Email: | robertn@nickellpps.com |

**AGREED AND ACKNOWLEDGED:**

**Aliya MedCare Finance, LLC**

Name: Erik Nord
Title: Manager

| | |
|---|---|
| Address: | 5550 Painted Mirage Road |
| | Suite 500 |
| | Las Vegas, Nevada 89149 |
| | Attention: Erik Nord |
| Email: | enord@uptonparkfinancial.com |

3

EXHIBIT H

**Form W-9**
(Rev. August 2013)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer Identification Number and Certification**

Give Form to the requester. Do not send to the IRS.

Comprehensive Toxicology Billing

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:
☐ Individual/sole proprietor ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate
☒ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ P
☐ Other (see instructions) ▶

Exemptions (see instructions):
Exempt payee code (if any)
Exemption from FATCA reporting code (if any)

Address (number, street, and apt. or suite no.)
373 VAN NESS AVE STE 100

City, state, and ZIP code
TORRANCE, CA 90501

Requester's name and address (optional)

List account number(s) here (optional)

**Part I  Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number
4 5 - 4 1 3 0 6 7 5

**Part II  Certification**

Under penalties of perjury, I certify that:
1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined below), and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

Sign Here | Signature of U.S. person ▶ | Date ▶ 11/17/14

**General Instructions**

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. The IRS has created a page on IRS.gov for information about Form W-9, at www.irs.gov/w9. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

**Purpose of Form**

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

Note. If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

Definition of a U.S. person. For federal tax purposes, you are considered a U.S. person if you are:
• An individual who is a U.S. citizen or U.S. resident alien,
• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,
• An estate (other than a foreign estate), or
• A domestic trust (as defined in Regulations section 301.7701-7).

Special rules for partnerships. Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X     Form **W-9** (Rev. 8-2013)

1/9/2015     301313196010001     562015010915667



EXHIBIT I

# UNITED STATES POSTAL SERVICE

## Official Change Of Address
## CONFIRMATION LETTER

LOOK INSIDE: STORE LOCATOR & VALUABLE OFFERS

## VERIFICATION REQUIRED

Mail will be forwarded for all persons at the old address of the following business:
**COMPREHENSIVE TOXICOLOGY SERVICES**
Your mail will be forwarded to your NEW address, as you requested, on: **Dec 1, 2014**

If the information contained on this page is incorrect, or you have not received mail at your new address for **10 Postal business days or more**, please call **1-800-ASK-USPS (1-800-275-8777)**.

If you need to view or cancel this Change-of-Address Order or change the date to start forwarding your mail, visit **managemymove.usps.com** and enter the Confirmation Code:   **1434 6900 0026 7950**

Visit managemymove.usps.com to add your email address and receive email reminders of mail forwarding expiration dates.

## YOUR OLD ADDRESS

**COMPREHENSIVE TOXICOLOGY SERVICES**
**373 VAN NESS AVE STE 100**
**TORRANCE CA 90501-1465**

*RECEIVED DEC 22 2014*

## YOUR NEW ADDRESS

**000001279 02 AT    0.406    T:0008**

**PRESIDENT**
**COMPREHENSIVE TOXICOLOGY SERVICES**
**373 VAN NESS AVE STE 280**
**TORRANCE CA 90501-6241**

## NOTIFY CORRESPONDENTS WHO SEND YOU MAIL

Mail forwarding may be available for up to 12 months and covers only certain classes of mail.

To ensure delivery of all your mail and to avoid forwarding delays, you should notify everyone who sends you mail.

## MAIL FORWARDING EXPIRATION DATES

First Class Mail, Priority & Express.... Dec 1, 2015
Newspapers, Magazines............... Jan 30, 2015
Packages[1]............................... Dec 1, 2015
Catalogs ................................. Not Forwarded[2]
Standard Mail ........................... Not Forwarded[2]

1. Some restrictions apply  2. Unless requested by mailer

## IMPORTANT MESSAGES FROM THE U.S. POSTAL SERVICE REGARDING YOUR MAIL FORWARDING REQUEST:

Yellow stickers with your new address are placed on mail forwarded by the U.S. Postal Service. To receive your mail faster, notify the sender of your new address.

Please retain this Official Change of Address Confirmation page for your records as local agencies and/or resources may require it for proof of your move.

## WHY THE YELLOW LABELS?

Yellow labels indicate the correspondent doesn't know your new address.

If you receive mail with a yellow label attached, notify the sender of your new address.

*12/22/... —*



SMIT0450   021353008 2607 15 12/29/14
JANICE SMITH
PO BOX 34
ANYTOWN MN 55803-0034

ll of the paper used to produce the USPS® Official Change of Address Confirmation Letter
vas sourced from sustainable forests.


**UNITED STATES POSTAL SERVICE**

CHANGE OF ADDRESS SECURITY DIVISION
COMPUTERIZED FORWARDING SYSTEM
UNITED STATES POSTAL SERVICE
2201 N GRAND AVE
SANTA ANA CA 92711-2200

DEC 14, 2014


RECEIVED
DEC 18 2014

Dear COMPREHENSIVE TOXICOLOGY SERVICES,

The Postal Service has received a
Change-of-Address order asking us to
forward mail *from* the following address
for the business named below:

**COMPREHENSIVE TOXICOLOGY SERVICES** 07588  1 AT 0.406  T:0024


**CURRENT RESIDENT OR**
**COMPREHENSIVE TOXICOLOGY SERVICES**
**373 VAN NESS AVE STE 100**
**TORRANCE CA 90501-1465**


*The purpose of this letter is to confirm that this request to forward mail is correct.*

**NO Action required if:**
- *The information listed above is correct.*
- *The Change-of-Address order is for someone who has already moved from this address.*

**Action required if:**
- *Anything is incorrect with the Change-of-Address order shown above, or if the business listed above did not ask the Postal Service to forward their mail, please call 1-800-ASK-USPS (1-800-275-8777).*

It is important that we work together to ensure proper mail delivery. Please notify your correspondents of your new address. If you are the current resident, and you continue to receive mail for the business above, please return the mail to your Post Office.

The United States Postal Service values you as a customer and we appreciate the opportunity to serve you.

Si usted no habla Ingles o no comprende esta carta, favor de llevar esta carta a su oficina local de correo para ayuda.

(If you do not speak English or you do not understand this letter, please take it with you to your local post office for assistance.)

*As required by law, the Postal Service does not provide customer names or addresses to third parties.*

0000086563        6400    011 001 000 000        1673-011-007588