UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA



Comprehensive Toxicology Billing, LLC,

    Plaintiffs,

v.

Erik Nord et al.,

    Defendants.

CV 14-7806-VAP (Ex)

**ORDER GRANTING IN PART AND DENYING IN PART ALIYA'S AND CTB PARTIES' MOTIONS IN LIMINE [DOC. NOS. 483-84, 487-90], AND GRANTING IN PART AND DENYING IN PART CTB PARTIES' MOTION TO SEPARATE AND PHASE TRIAL [DOC. NO. 482]**

On December 30, 2016, Counterclaim Defendant and Counterclaim Plaintiff in Reply Aliya Medcare Finance, LLC ("Aliya") and counterclaim defendants Erik Nord, Henrik Sten, Comprehensive Toxicology Services, Inc., and Upton Park Financial, LLC (collectively with Aliya, the "Aliya Parties") filed three motions in limine ("Aliya's Motions"). (Doc. Nos. 488-90.) On December 30, 2016, Counterclaim Plaintiff and Counterclaim Defendants in Reply Comprehensive Toxicology Billing ("CTB") and Counterclaim Defendants in Reply Exec Billing Services, LLC, Chematox Biosciences, LLC, and Robert Nickell (collectively with CTB, the "CTB Parties") filed three motions in limine (the "CTB Parties' Motions"). (Doc. Nos. 483, 484, 487.) In addition, on December 30, 2016, the CTB Parties filed a Motion to Separate and Phase Trial. (Doc. No. 482.)

## I. MOTIONS IN LIMINE

### A. Aliya Parties' Motion in Limine No. 1: To Exclude Evidence That Anyone Other Than Aliya Owns the Receivables and Any Evidence and Arguments Re: Lenders

The Aliya Parties seek to exclude any evidence, testimony, or comments arguing that anyone but Aliya owns the receivables and, specifically, any reference to lenders Credit Saison, Asaba, and Kono. (Doc. No. 488 at 1.) The CTB Parties argue that the evidence identified above is relevant to resolving whether Aliya owned the receivables at the time of the alleged conversion.[1] (Doc. No 519 at 6-7.)

Aliya's ownership of the receivables at the time it of the alleged conversion, however, need not be resolved at this point. As the Court has already determined, Credit Saison has assigned any interest it may have had in the receivables back to Aliya. (Doc. No. 507 at 21.) Indeed, Credit Saison's assignment letter stated it was not only assigning its ownership rights in the receivables, but its "rights to bring any claim . . . for interference or obstruction with any such rights." (Doc. No. 427-11 at 14.) Such an assignment appears to be permissible under Nevada law. See Waterton Global Mining Co., LLC v. Cummins Rocky Mountain, LLC, No. 3:14-cv-0405-

---

[1] In its Summary Judgment Order, the Court determined that Aliya, at this point, "owns the receivables it purchased and paid for between March 28, 2013, and October 31, 2014, with the exception of the receivables that Aliya rejected on October 19, 2014." (Doc. No. 507 at 22.) The Court, however, fell short of determining that Aliya has always owned the receivables since March 28, 2013, and that it did not transfer its interest in the receivables to the AIG Entities or Credit Saison. (Id. at 25 ("[T]here is a genuine issue of material fact as to whether Aliya lacked ownership of the receivables at the time it asserted its counterclaims.").) Hence, whether Aliya owned the receivables in question at the time of the alleged conversion remains a question of fact for the jury.

RCJ-VPC, 2015 WL 714485, at *4-5 (D. Nev. Feb. 19, 2015) (reviewing Nevada law and declining to dismiss the plaintiff's claims because, "under Nevada law, a tort action to recover damages to property is likely assignable" given that "the harm alleged in such a claim is specific to the property rather than the individual").

Moreover, the Court is unpersuaded by the CTB Parties alternative argument that the creditor evidence is relevant because it may demonstrate Aliya's purpose for breaching the Third Agreement. The CTB Parties have not offered any legitimate reason how this evidence would make the Aliya Parties' testimony regarding their termination of the Third Agreement any less credible. Even if the Court were to assume that the evidence carries some probative value, the value would be significantly outweighed by the likelihood that the evidence would confuse the issues, result in undue delay, and waste time during the trial.

Accordingly, the Court GRANTS the Aliya Parties' Motion in Limine No. 1.

### B.   ALIYA PARTIES' MOTION IN LIMINE NO. 2: TO EXCLUDE EVIDENCE OF ALIYA'S "TAX IMPROPRIETIES"

The Aliya Parties seek to exclude any evidence, testimony, or comments that it used CTB's federal tax identification number and CTB's name in tax forms in order to collect on the receivables. (Doc. No. 489 at 7-8.) As the CTB Parties make clear, that evidence is relevant to several of CTB's claims and defenses to the Aliya Parties' counterclaims, including the CTB Parties' federal Lanham Act and Nevada common law trademark claims. (Doc. No. 496 at 3-6.) Further, as the CTB Parties will "not . . . offer the evidence for the purpose of proving that Aliya is guilty of a

crime," the evidence does not present a danger of undue prejudice that outweighs its probative value.

Accordingly, the Court DENIES the Aliya Parties' Motion in Limine No. 2. The Court stresses, however, that the CTB Parties may not improperly suggest that Aliya or any of the Aliya Parties committed "tax fraud" or other crimes through Aliya's use of CTB's federal tax identification number and CTB's name in tax forms.

### C. ALIYA PARTIES' MOTION IN LIMINE NO. 3: TO EXCLUDE EVIDENCE REGARDING CALIFORNIA WORKERS COMPENSATION APPEALS BOARD RULINGS

The Aliya Parties seek to exclude any evidence, testimony, or comments regarding rulings of the California Workers Compensation Appeals Board. Those rulings, which were before an administrative law judge and followed an uncontested hearing, are not relevant to the issues presently in dispute between the parties. Even if the Court were to find the rulings are minimally relevant and carry some probative value, such value is substantially outweighed by their high risk of confusing the jury, creating an undue delay, wasting time, and unfairly prejudicing the Aliya Parties. Accordingly, the Court GRANTS the Aliya Parties' Motion in Limine No. 3.

### D. CTB PARTIES' MOTION IN LIMINE NO. 1: TO EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT, AND COMMENT REGARDING *PREFERRED PHYSICIAN PROVIDERS* LITIGATION

The CTB Parties seek to exclude any evidence, testimony, or comments related to a settled state-court action, <u>Preferred Physician Providers, Inc. v. Charles</u>

4

Schwarz, et al., Los Angeles Superior Court, No. YC070434. The Court agrees that the Preferred Physician Providers litigation is a separate and unrelated action, which is minimally relevant and carries a high likelihood of distracting the jury and wasting time. For those reasons, the Court excludes any evidence, testimony, and argument regarding the Preferred Physician Providers litigation with one exception—the Aliya Parties may present sworn testimony from the Preferred Physician Providers litigation for impeachment purposes provided the testimony otherwise satisfies the requirements of the Federal Rules of Evidence. See, e.g., Fed. R. Evid. 801(D)(1)(A). Accordingly, the Court GRANTS IN PART and DENIES IN PART the CTB Parties' Motion in Limine No. 1.

### E. CTB Parties' Motion in Limine No. 2: To Exclude Testimony, Evidence, Argument, and Comment Regarding Nickell's Guilty Plea

The CTB Parties seek to prevent the Aliya Parties from presenting any evidence, eliciting any testimony, or making any comments regarding Robert Nickell's 1986 guilty plea to theft from a government agency of a sum less than a hundred dollars. As the conviction is more than ten years old, it may be admitted only if the conviction's probative value . . . substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). Nickell's guilty plea to a minor offense thirty years ago—a crime that featured circumstances vastly different from the dispute presently before the court—carries minimal, if any, probative value. That minimal probative value is substantially outweighed by its potential to prejudice Nickell. Accordingly, the Court GRANTS the CTB Parties' Motion in Limine No. 2.

## F. CTB Parties' Motion in Limine No. 3: To Exclude Expert Testimony

The CTB Parties seek to exclude the testimony of the Aliya Parties' expert witnesses Patrick Kennedy and Kevin Henry. Under Federal Rule of Evidence 702, an expert may testify if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony must also be relevant pursuant to Federal Rule of Evidence 401 and may be excluded pursuant to Federal Rule of Evidence 403.

The expert witness's testimony must be "based on sufficient facts or data," "the product of reliable principles and methods," and the product of a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702. A trial judge has a "gatekeeping" obligation with respect to opinion testimony of experts. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. In order to fulfill this function as to scientific testimony, the trial court "must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue." Id. at 580.

### 1. Patrick Kennedy

The CTB Parties argue that the Court should exclude the testimony of Patrick Kennedy, the Aliya Parties' lost-profit damages expert, because: (1) Kennedy's analysis is based on unreliable and unsupported assumptions; (2) Kennedy's opinion will needlessly confuse the jury; (3) Kennedy's analysis is inconsistent with relevant

6

caselaw; and (4) Kennedy's analysis includes calculations relating to already-dismissed diversion claims.

The CTB Parties' contend that Kennedy's analysis is based on the following unreliable and unsupported assumptions: (i) all receivables will occur over a 60-month collection period and generate proceeds equal to 42.7% of their face value; (ii) the collection costs for all receivables would be 15% of the calculated proceeds; and (iii) the discount rate of 15% of the present value of the proceeds is appropriate. The CTB Parties' contentions fail.

Kennedy did not assume that <u>all</u> receivables are collected within 60 months. Rather, his report illustrates that the historical monthly collection and adjustment rates, when combined, show that the receivables were collected or written off by month 60 because the monthly rates resulted in a zero balance after that period. (Doc. No. 491-1 at 9.) In the same fashion, Kennedy determined the 42.7% collection rate after reviewing the receivable's historical rate of collections and adjustments. (<u>Id.</u> at 8-9.) The collection cost percentage was determined after a review of the historical collection costs. (<u>Id.</u>) Moreover, both the collection cost percentage and the discount rate used by Kennedy are more conservative calculations than the percentages used by the CTB Parties' own expert. (<u>See</u> Doc. No. 503 at 16-17.) In short, the CTB Parties have provided no legitimate reason why the Court should find that Kennedy's opinions are based on improper assumptions and are unreliable.

The CTB Parties also argue that Kennedy's opinion will needlessly confuse the jury because "the jury would not know what damages to award based on

Kennedy's opinions." (Doc. No. 514 at 8.) The Court, however, finds that Kennedy's opinions are clear and have great probative value that outweighs any danger of confusion. Indeed, Kennedy's analysis does not blur the lines between the issues and is not contrary to law. For example, while the CTB Parties correctly point out that "a mere contractual right to payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion," In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999), it does not follow that the denial of immediate possession is insufficient to establish a cause of action for breach of contract. In this case, if the Aliya Parties are able to establish that CTB converted its property, such a conversion would also clearly establish that CTB breached the agreement between the Parties.

Nor is Kennedy's analysis contrary to law. Although conversion damages are measured "at the time of" the conversion, the nature of accounts receivable complicate the analysis because "[c]ourts should consider the collectibility of accounts receivable, and from that, determine the value of the accounts receivable." Medi-Cen Corp. v. Birshbach, 720 A.2d 966, 969, 976 (Md. App. 1988). "Experts may be useful in considering the collectibility of the holder's past accounts receivable and, based on those values and records, calculating the value of the holder's uncollected accounts receivable. . . . Any competent and admissible evidence tending to shed light on the collectibility of accounts receivable might be relevant and material." Id. at 976. Here, Kennedy reviewed the historical date of collections and adjustments on the receivables in question to make determinations as to their collectability. Such an approach is entirely consistent with relevant caselaw.[2]

---

[2] The CTB Parties further contend that Kennedy's analysis is flawed because he does not distinguish between collections that have occurred and those that have

8

Finally, the CTB Parties seek to exclude Kennedy's damages analysis as to diversion. This Court previously dismissed the Aliya Parties' diversion claims because they were "not compulsory." (Doc. No. 357 at 18.) The Court noted that, although "breach of contract claims arise from the same contract[, that] is not alone sufficient to create a logical relationship between the claims." (Id.) The Aliya Parties' assertion of a defense to the CTB Parties' breach of contract claim does not entitle them to expert testimony regarding damages. Accordingly, Kennedy's damages analysis as to diversion must be excluded.

For the reasons stated above, the Court GRANTS IN PART the CTB Parties' Motion in Limine No. 3 as to Kennedy's diversion damages analysis and DENIES IN PART the CTB Parties' Motion in Limine No. 3 as to the rest of Kennedy's analysis.

**2. Kevin Henry**

The CTB Parties argue that the Court should exclude the testimony of Kevin Henry, the Aliya Parties' alter-ego expert, because: (1) he is unqualified to offer his opinions in this case; (2) his opinions are improper legal conclusions; and (3) his opinions are unreliable, unsupported, and irrelevant.

---

not. They point that that while Kennedy accounts for the $1.1 million in collections that Aliya obtained between November 2014 and September 2016, he ignores the collections that CTB made during the same period. While this discrepancy may be a legitimate critique of Kennedy's methods, it is insufficient to render his entire opinion unreliable and inadmissible.

As a threshold matter, Henry is qualified to testify as an expert. Henry has 27 years of experience in finance and, during the course of his career, he has analyzed the financial statements and financial conditions of hundreds of companies, ranging from small sole proprietorships to multi-national conglomerates. (Doc. No. 503-1 at 3.)[3] Henry's "expertise is in understanding the framework by which accountants record historical transactions in the books and records of a business, and then analyzing, adjusting, and interpreting those records in order to understand and communicate the commercial implications and valuation implications of those financial records to a variety of stakeholders and potential stakeholders." (Id. at 3-4.) He has analyzed hundreds of businesses of a similar size and structure to the various Nickell-related entities and has experience interpreting and communicating the commercial implications of the financial records of those entities. (Id. at 4.) This experience is sufficient to permit Henry to testify as to whether he believes: CTB commingled funds amongst its associated entities; CTB diverted of funds for non-corporate purposes; those diversions were conducted at arm's length; CTB was

---

[3] The CTB Parties contend that Court cannot consider Henry's supplemental declaration detailing his qualifications. (Doc. No. 514 at 12.) Courts, however, routinely admit supplemental expert evidence the extent that the evidence is within the scope of the initial expert report. See, e.g., Faulkner v. Arista Records LLC, 46 F. Supp. 3d 365, 379 (S.D.N.Y. 2014) (declining to strike an expert witness' supplemental declaration that provided additional information on the witness' qualifications because the risk of prejudice was low and the additional evidence would be useful to the trier of fact); see also Plumley v. Mockett, 836 F. Supp. 2d 1053, 1064 (C.D. Cal. 2010) (excluding a supplemental expert report submitted after the close of expert discovery because the new report, "rather than correcting an error or omission in his prior report, provide[d] a new opinion that is designed to strengthen Defendants' legal argument") (emphasis added). The additional information regarding Henry's qualifications expressed in the supplemental declaration is within the scope of Henry's initial report and does not provide a new opinion or argument. The Court, therefore, is within its discretion to consider it.

inadequately capitalized; CTB was used as a shell, instrumentality, or conduit and not as a commercially viable enterprise; and CTB acted to procure services for another entity.

The CTB Parties' argument that Henry's testimony is made up of improper legal conclusions lacks merit. The Aliya Parties make clear that Henry does not and will not "offer any ultimate opinion as to whether any particular person or entity is in fact the alter ego of another." (Doc. No. 503 at 22.) Rather, his analysis is constrained to the factors identified in Associated Ventors, Inc. v. Oakland Meat Co. 210 Cal. App. 2d 825 (1962). Such analysis of fact is permissible.

Finally, the CTB Parties provide no legitimate reason why Henry's testimony is not reliable, supported, or relevant. They contend that Henry's report improperly focuses on commingling between CTB and Aliya, rather than CTB and Nickell. But the report discusses how CTB transferred funds to other Nickell companies for what appear to be non-corporate purposes and treated corporate assets as Nickell's personal assets. (Doc. No. 492 ¶¶ 20-31.) Moreover, Henry cites to specific documents, such as CTB's monthly balance sheets, to support his conclusion that CTB defied "commercially reasonable expectation[s]" and was not adequately capitalized. (Id. at 13-14.) Accordingly, Henry's opinion appears reliable, supported, and relevant, and its probative value is not substantially outweighed by the danger of unfair prejudice to the CTB Parties.

For the foregoing reasons, the Court DENIES the CTB Parties' Motion in Limine No. 3 as to Henry's testimony.

## II. MOTION TO SEPARATE AND PHASE THE TRIAL

Pursuant to CTB's Motion to Separate and Phase the Trial, the Parties agree to separate the trial into three phases: the first, before a jury, to determine liability, damages, and whether any liable defendant acted with malice, oppression, or fraud; and a second, if necessary and also before a jury, to determine the amount of punitive damages to be awarded; and a third, if necessary and before the court only, to determine the Aliya Parties' alter ego claim. (Doc. No. 501 at 2-4.) Where the Parties disagree is whether the Court may receive evidence on the Aliya Parties' alter ego claim during the first phase of the trial. (Id. at 3-4.) The CTB Parties contend that the Court must review the alter ego evidence during the third phase of the trial, whereas the Aliya Parties argue that the Court may receive the evidence in the presence of the jury and may allow the jury to render an advisory verdict. (Id.)

As the Aliya Parties note, there is significant overlap between the alter ego evidence and the malice, oppression, and fraud issues to be tried in the first phase of the trial. For example, a jury could reasonably determine that Nickell's transfer of corporate funds out of CTB and into his other entities is evidence that he used CTB as a shell enterprise and thus never intended to honor the business agreement he entered into with Aliya. Moreover, the jury could also view Nickell's transfer of corporate assets and undercapitalization of CTB as evidence in favor of the Aliya Parties' promissory fraud claims. More specifically, the Aliya Parties contend that Nickell and CTB promised a refund for out-of-network receivables, but a jury could reasonably find that the alter-ego evidence suggests that Nickell never intended for CTB to be able to pay such a reimbursement.

For those reasons, the Court GRANTS IN PART AND DENIES IN PART CTB Parties' Motion to Separate and Phase the Trial.  The Court will allow the Aliya Parties to present alter ego evidence to the degree that it is relevant to the malice, oppression, and fraud issues to be tried during <u>the first phase of the trial</u>.  The Court, however, will not request an advisory verdict from the jury and, if necessary, will determine alter ego liability during the third phase of the trial.

### III.  CONCLUSION

For the reasons stated above, the Court DENIES the Aliya Parties' Motion in Limine No. 1.  The Court DENIES the Aliya Parties' Motion in Limine No. 2.  The Court GRANTS the Aliya Parties' Motion in Limine No. 3.

The Court GRANTS IN PART and DENIES IN PART the CTB Parties' Motion in Limine No. 1.  The Court GRANTS the CTB Parties' Motion in Limine No. 2.  The Court GRANTS IN PART the CTB Parties' Motion in Limine No. 3 as to Kennedy's diversion damages testimony, and DENIES IN PART the CTB Parties' Motion in Limine No. 3 as to the rest of Kennedy's testimony as well as all of Henry's testimony.

Finally, the Court GRANTS IN PART AND DENIES IN PART the CTB Parties' Motion to Separate and Phase the Trial.

**IT IS SO ORDERED.**

Dated: 2/3/17

                                        Virginia A. Phillips
                                Chief United States District Judge